# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JEREMIAH VANHORN,** ) | |
|     **PLAINTIFF,** ) | |
| **VS.** ) | **2:15-cv-467-JHH** |
| **LOCKLEAR AUTOMOTIVE** ) | |
| **GROUP, INC.,** | |
| ) | |
|     **DEFENDANT.** | |

## MEMORANDUM OPINION

The court has before it the June 17, 2015 Motion (Doc. #3) to Dismiss Without Prejudice, Or, In the Alternative Motion to Stay Action and To Compel Arbitration filed by Defendant Locklear Automotive Group, Inc. Pursuant to the court's June 18, 2015 order (Doc. # 4), Plaintiff filed a Response (Doc. #5) in Opposition on July 2, 2015, and Defendant filed a Reply (Doc. #6) on July 8, 2015. The Motion (Doc. #3) is now under submission, without oral argument, and due to be granted for the following reasons.

## I. Background

### A. Procedural History

Plaintiff filed the instant Complaint (Doc. #1) on March 19, 2015, alleging violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §§ 2000e et seq.  Specifically, Vanhorn alleges that his employment with Locklear Automotive was discriminated against and ultimately terminated because of his race, African American.  (*See generally* Compl.)  On June 17, 2015, Defendant filed a Motion (Doc. #3) to Dismiss Without Prejudice, Or, In the Alternative Motion to Stay Action and To Compel Arbitration.  The Motion, as supported by the accompanying Memorandum of Law, asserts that Plaintiff signed an Arbitration Agreement whereby he agreed that any dispute relating to his employment would be resolved through arbitration.  (*See* Exh. A to Doc. #3.)

**B.  Arbitration Agreement**

At the inception of his employment with Locklear Automotive, on September 16, 2013, Vanhorn and Defendant mutually executed a written Arbitration Agreement (the "Agreement").  (Exh. A to Doc. #3.)  The Agreement provides:

> [T]he Employer and Employee mutually agree that all disputes not barred by applicable statutes of limitations, resulting from or arising out of said employment (including but not limited to . . . the benefits and conditions of employment . . . ; the relationship between the Employer and the Employee and other Employees of the Employer; the working conditions while employed; the terms, manner and conditions of termination (voluntary or involuntary); the Employer's compliance with any state and/or federal employment and civil rights rules, regulations and laws . . .) shall be submitted to **BINDING ARBITRATION**, pursuant to the provisions of 9 U.S.C. Section 1, et seq. and according to the Commercial Rules of the American

>Arbitration Association then exiting in the County where
>the Employer maintains its principal place of business . . .
>.

(Exh. A. to Doc. #3) (emphasis in original.)

**II.  Discussion**

Defendant's Motion (Doc. #3) to Compel Arbitration asserts the following grounds for ordering the case to proceed under the terms of the Agreement: (1) that the Federal Arbitration Act ("FAA") governs the case; (2) that the Agreement is valid and binding; and (3) that Plaintiff's claims are within the scope of the Agreement. (Doc. #3 at 2-6).  Plaintiff opposes the motion to compel arbitration and argues that the Agreement is unenforceable because it is unconscionable.  (*See* Doc. #5 at 2-3). The court agrees with Defendant for the following reasons.

**A.     The Federal Arbitration Act Governs the Case**

There is no dispute that the arbitration agreement in this case is subject to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA").  (*See generally* Doc. #5 at 4). The FAA carries with it certain standards applicable to this court's review of the pending motion.

"In enacting the FAA, Congress demonstrated a 'liberal federal policy favoring arbitration agreements.'" *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (citation omitted).  As such, "questions of arbitrability must be addressed

3

with a healthy regard for the federal policy favoring arbitration." *Franklin*, 177 F.3d at 947. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986). Pursuant to the FAA, a claim is arbitrable if the following three criteria are satisfied: (1) there is a valid agreement to arbitrate; (2) the claim falls within the scope of the agreement to arbitrate; and (3) the claim, if a statutory one, must not be one which the legislative body enacting it intended to be precluded from arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Here, all three criteria are satisfied, and the claim is therefore arbitrable, for the following reasons.

    **1.**    **Valid Agreement to Arbitrate**

Where the FAA applies, the district court's next step is to determine whether a valid agreement to arbitrate exists. *Prima Paint Corp. v. Flood & Conklin*, 388 U.S. 395 (1967). Judicial determinations on the validity of an agreement to arbitrate are

to be decided as a matter of contract. *See AT&T Techs., Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 648-649 (1986). Under Alabama law, "[t]he elements of a valid contract include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Shaffer v. Regions Financial Corp.*, 29 So.3d 872, 880 (Ala. 2009) (citations and internal quotations omitted). The burden is on the party opposing arbitration to proffer evidence demonstrating that the agreement is invalid. *Gilmer*, 500 U.S. at 26.

When he was hired by Defendant, Plaintiff signed the above-quoted Arbitration Agreement. Plaintiff was required to sign the Agreement as a condition of his offer of employment, and she was an at-will employee of Defendant. Plaintiff's at-will employment establishes the acceptance and consideration necessary to form a binding contract. *See Maeriquest Mortg. Co. v. Bentley*, 851 So.2d 458, 464 (Ala. 2002). Therefore, under Alabama law, the Agreement was valid and binding.

**2.     Plaintiff's Claim Are Within the Scope of the Agreement**

Under the Agreement, Plaintiff agreed to arbitrate "all disputes . . . resulting from or arising out of said employment (including but not limited to . . . the benefits and conditions of employment . . . ; the relationship between the Employer and the Employee and other Employees of the Employer; the working conditions while employed; the terms, manner and conditions of termination (voluntary or

5

involuntary); the Employer's compliance with any state and/or federal employment and civil rights rules, regulations and laws "all claims . . . which arise out of or are related in any way to the employment relationship . . . ." (Def. Exh. A.) Plaintiff's Complaint states a claim for a violation of 42 U.S.C. § 1981 and Title VII based on alleged discrimination during his employment and the termination of his employment because of his race. Such claims clearly "arise out of" and are "related to" his employment relationship with Defendant. As such, they fall within the scope of the Arbitration Agreement.

### 3. Discrimination Claims are Arbitrable Statutory Claims

The last issue the court must decide is whether the statutory claims involve rights which Congress did not intend to be subject to arbitration. *See Gilmer*, 500 U.S. at 26. The burden is on Plaintiff to prove that the legislature intended to preclude a waiver of judicial remedies for the statutory right asserted. *Id.*

Case law clearly establishes that claims arising under the federal discrimination statutes are subject to arbitration. *See id.* at 29-30 (ADEA claims are arbitrable); *Bender v. A/G/ Edwards & Sons, Inc.*, 971 F.2d 698, 700 (11th Cir. 1992) (Title VII claims are arbitrable); *Kelly v. UHC Mgmt. Co.*, 967 F. Supp. 1240, 1250 (N.D. Ala. 1997) (Section 1981 claims are subject to arbitration with a valid agreement to arbitrate). The well-established case law precludes Plaintiff from successfully

arguing that the legislature intended to preclude a waiver of judicial remedies for the statutory rights asserted here.

**B. The Arbitration Agreement is not Unconscionable**

Under Alabama law, "there is nothing inherently unfair or oppressive about arbitration clauses . . . and arbitration agreements are not in themselves unconscionable." *Ryan's Family Steakhouse, Inc. v. Kilpatric*, 966 So.2d 273, 284–85 (Ala.Civ.App. 2006) (internal quotations and citations omitted); *see also Sloan Southern Homes, LLC v. McQueen*, 955 So.2d 401, 404 (Ala. 2006). This is equally true in employment cases, where courts have stressed that "[m]ere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Service Corp. Int'l v. Fulmer*, 883 So.2d 621, 633 n.15 (Ala. 2003). An unconscionable contractual provision is one "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Ryan's,* 966 So.2d at 284–85 (citations omitted).

"Under Alabama law, unconscionability is an affirmative defense to the enforcement of a contract, and the party asserting that defense bears the burden of proving it by substantial evidence." *Bess v. Check Express*, 294 F.3d 1298, 1306–07 (11th Cir. 2002). The Alabama Supreme Court has enumerated the two essential

7

elements of unconscionability: "(1) terms that are grossly favorable[1] to a party that has (2) overwhelming bargaining power." *American Gen. Fin., Inc. v. Branch*, 793 So.2d 738, 748 (Ala. 2000). More generally, Alabama courts require parties objecting to arbitration clauses on unconscionability grounds to prove <u>both</u> procedural unconscionability, that the imposed-upon party lacked meaningful choice about whether and how to enter into the transaction, <u>and</u> substantive unconscionability, that the contract terms are unreasonably favorable to the more powerful party. *See Blue Cross Blue Shield of Alabama v. Rigas*, 923 So.2d 1077, 1086-87 (Ala. 2005).

On the issue of substantive unfairness, there is no legal or factual basis to establish that the Arbitration Agreement's terms are grossly unfavorable to Plaintiff. Plaintiff does not identify any particular aspect of the Agreement that he believes to be oppressive,[2] but, relying on *American General Finance, Inc. v. Branch*, 793 So.2d

---

[1] "To satisfy the grossly favorable standard, courts look to whether the agreement includes (a) terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy, (b) terms that would impermissibly alter fundamental legal duties, (c) terms that seek to negate the reasonable expectations of the nondrafting party, and (d) unreasonably and unexpectedly harsh terms having to do with central aspects of the transaction." *Patriot Mfg., Inc. v. Dixon*, 399 F.Supp.2d 1298, 1311 (S.D.Ala. 2005).

[2] Plaintiff's argument regarding the exemption of Defendant from the duty to arbitrate claims under $10,000 in the District Courts of Alabama is mistaken. The Agreement clearly allows both parties to file in the District Courts of Alabama if the claim does not exceed $10,000. (*See* Exh. A to Doc. #3.)

738 (Ala. 2000), argues generally that the Agreement is over broad.

The mere fact that an arbitration is broad does not require a court to conclude that its terms are necessarily grossly favorable to one particular party under Alabama law. *See Leeman. v. Cook's Pest Control, Inc.*, 902 So. 2d 641, 652 (Ala. 2004). "An arbitration provision constitutes an agreement between the parties to submit their disputes to arbitration, as opposed to litigation. It is only natural that, pursuant to that preference, an arbitration provision be designed to actually cover many potential disputes between the parties, not just some disputes." *Id.* at 652-53. Further, with regard to Branch, the Alabama Supreme Court explained:

> [W]hile our decision in *Branch* considered the breadth of the arbitration provision as an indicium of unconscionability, this Court has subsequently noted that our consideration of that factor in *Branch* also took into account numerous other factors: . . . this Court did not rely solely on the breadth of the arbitration clause, rather, it noted that there were several indicia that the provisions of the contract were 'so grossly favorable as to pass the first prong of the unconscionability test'. The Court identified 'the breadth of the clause,' 'the provision purporting to invest the arbitrator with the threshold issues of arbitrability,' 'the provision exempting the Lenders from the duty to arbitrate and expressly reserving for them the right to try to a jury their claims against Branch up to $10,000,' and the 'provision purporting to limit the right of the arbitrator to award an amount exceeding five times the amount of economic loss.'

*Id.*

Additionally, Plaintiff has not demonstrated that the Defendant had overwhelming bargaining power.  There is no evidence before the court that Defendant placed this agreement before the Plaintiff on a take-it-or-leave-it basis, threatened to fire him if he refused to sign the agreement, forced him to sign the agreement on the spot or forbade him from reviewing the agreement with counsel or anyone else he saw fit.[3]  Instead, Plaintiff relies on "unabashed conjecture" and self-serving statements that the Agreement was a transaction involving "man power for pay", that he was required to sign it on a take-it-or-leave it basis and was not given a change to negotiate or seek advice from counsel.  Unsupported allegations in a brief do not amount to evidence of a lack of meaningful choice.  *See Ryan's Family Steakhouse, Inc.*, 966 So. 2d at 285-86 (rejecting employee's argument that arbitration agreement was procedurally unconscionable where employee "offered no evidence indicating that she lacked a meaningful choice in signing the arbitration agreement or that Ryan's exercised overwhelming bargaining power.")

Instead, Plaintiff has "provided no evidence showing how h[is] situation is different from any other contract of at-will employment."  *Potts v. Baptist Health*

---

[3] Plaintiff "does not submit any evidence that [h]e attempted to negotiate the terms of h[is] agreement . . . or tried to find . . . [employment] without an arbitration clause." *Powell v. AT&T Mobility, LLC*, 742 F. Supp.2d 1285, 1290 (N.D. Ala. 2010). "It is difficult to conclude that a plaintiff lacks a meaningful choice - and that this lack of choice could render the arbitration provision unconscionable - when in fact they never undertook to actually make a choice." *Id.*

*System, Inc.*, 853 SO. 2d 194, 206 (Ala. 2002). "[T]he possibility of termination flowing from [a plaintiff's] refusal to sign . . . is not, in and of itself, unconscionable" and "Alabama law does not allow a mere showing of financial hardship to invalidate an arbitration agreement." *Id.*

For the foregoing reasons, the court finds that Plaintiff has failed to meet his burden of establishing the affirmative defense that the Arbitration Agreement in question is unconscionable.

### III. Conclusion

The Motion (Doc. # 3) to Compel Arbitration is **GRANTED**. A separate order will be entered dismissing the case without prejudice.

**DONE** this the   22nd   day of July, 2015.

James H. Hancock
SENIOR UNITED STATES DISTRICT JUDGE